IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| Deep Vision Architects, LLC | § § § | |
| *Plaintiff*, | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| Virtuoso, Ltd. | § § | |
| *Defendant*, | § | |

# COMPLAINT

### Nature of the Suit

1. This case is brought pursuant to 15 U.S.C. § 1114(2)(D)(iv)-(v) and for declaratory relief pursuant to 28 U.S.C. § 2201 to establish that DVA's registration and use of the internet domain name VIRTUOSO.IO is not unlawful under the Anticybersquatting Consumer Protection Act (15 U.S.C. § 1125(d) ("ACPA") or otherwise under the Lanham Act (15 U.S.C. § 1051, *et seq.*).

2. Specifically, Defendant filed under the Uniform Domain Name Dispute Policy in a proceeding captioned: *Virtuoso, Ltd., v. Deep Vision Architects* Claim Number: DIO2022-0049 VIRTUOSO.IO.

3. Section 1114(2)(D)(v) of Title 15 of the U.S. Code authorizes a domain name registrant to sue trademark owners for "reverse domain name hijacking" and to commence an action to declare that the domain name registration or use by the registrant is not unlawful under the Lanham Act.

4. This action arises from Defendant's efforts to acquire Plaintiff's valuable domain

name VIRTUOSO.IO through the assertion of a misleading and wholly frivolous cybersquatting claim under the Uniform Domain Name Dispute Resolution Policy ("UDRP"), one that is based on materially inaccurate and misleading factual assertions and legal contentions.

5. Plaintiff seeks relief in the form of a declaratory judgment that it is the rightful user of the domain name and a prohibition on the transfer of the Domain Name to Defendant.

6. Plaintiff further seeks monetary and/or statutory damages and attorneys' fees for reverse domain name hijacking under 15 U.S.C. § 1114(2)(d)(iv) and for Intentional Interference with Contractual Relationship and Abuse of Process.

## PARTIES

7. Plaintiff is a California corporation with its principal place of business in Westlake Village, California.

8. Upon information and belief, Defendant is a Texas limited liability company with its principal place of business at 777 Main Street, Suite 900 Fort Worth, TX 76102.

## JURISDICTION AND VENUE

9. Pursuant to 28 U.S.C. §§ 2201(a) and 2202, Plaintiff seeks a declaration and judgment regarding its rights and obligations in an actual controversy between Plaintiff and Defendant within this Court's jurisdiction concerning Plaintiff's rights in and to the domain name VIRTUOSO.IO.

10. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331, giving this Court original jurisdiction in a civil action raising a federal question, and 28 U.S.C. §1338(a), giving this Court original and exclusive jurisdiction in a civil action arising under the trademark laws of the United States.

11. Venue is proper in this district as Defendant is incorporated in and has its primary place of business in this jurisdiction.

12. Plaintiff also files in this district pursuant to the requirements of the Uniform Dispute Resolution Policy.

## FACTUAL ALLEGATIONS

*Plaintiff's Business*

13. Plaintiff's business is located in California from which it operates globally. Its business is buying and selling generic Internet domain names.

14. Plaintiff bought the domain name VIRTUOSO.IO on August 23, 2020, and has at all times directed the domain name to a generic sales page.

15. Plaintiff did not buy VIRTUOSO.IO for the purpose of resale to Defendant or to target Defendant, and in fact had never heard of Defendant prior to the filing of the UDRP.

16. Plaintiff bought the domain solely because it is a generic dictionary word.

*The ACPA and UDRP*

17. In 1999, Congress enacted the Anticybersquatting Consumer Protection Act ("ACPA") to address the pernicious issue of cybersquatting, otherwise known as the registration, trafficking in, or use of a domain name with a bad faith intent to profit from another's trademark.

18. Additionally, Uniform Dispute Resolution Process ("UDRP") was created to provide a relatively cost-effective administrative remedy to address cybersquatters.

19. The ACPA and the UDRP prohibit only bad faith use of another's mark in a domain name:

> (a) Good faith, innocent or negligent uses of a domain name that is identical or confusingly similar to another's mark or dilutive of a famous mark *are not*

*covered by the legislation's prohibition.* Thus, registering a domain name while unaware that the name is another's trademark would not be actionable.

106 Cong. Rec., S10518 (emphasis added).

20. Recognizing the value of domain names and the potential for overreaching claims by trademark owners, Congress provided domain name owners with causes of action to determine that they have **_not_** violated the ACPA. In such cases the domain owner could also obtain damages in addition to preserving their ownership of the subject domain name.

<u>The UDRP Proceeding</u>

21. On or about November 1, 2022, Defendant filed a proceeding with the World Intellectual Property Organization ("WIPO") under the Policy, in which Defendant misrepresented the facts relating to VIRTUOSE.IO and misconstrued the law.

22. Specifically, Defendant claimed:

(a) That the domain name being listed on a sales site with Afternic.com did not constitute legitimate use of the domain name as a commodity;

(b) That Plaintiff's stated price for the domain name ($54,995) was a bad faith use because it was more than Defendant wished to pay;

(c) That because Plaintiff protected its registration information on the domain name it is using the domain name in bad faith.

23. None of these facts, even if true, constitute bad faith use of a domain name under black letter law.

24. No response was filed to the UDRP and this complaint is being filed prior to any UDRP decision.

25. So-called "passive holding" of domain names; the refusal to sell the disputed domain

name to it for a certain amount; and the fact that a party holds several domain names (including dictionary words), *per se*, are not evidence of bad faith. The business of buying and selling domain names is a legitimate business as long as the domain names are not acquired for their trademark value and for purposes of targeting the trademark holder.

26. Plaintiff's Domain Name, VIRTUOSO.IO, has been locked by GoDaddy, the Domain Name's registrar, in consequence of the UDRP proceeding, denying Plaintiff full enjoyment of the expected benefits of ownership, including the right to re-sell it.

## COUNT I:

### Declaratory Judgment

27. Defendant has asserted that Plaintiff registered and used the VIRTUOSO.IO domain name in bad faith and without any rights or legitimate interests in the domain name.

28. Defendant has asserted that Plaintiff's ownership and use of the domain name VIRTUOSO.IO is likely to cause confusion among Defendant's consumers and the consuming public.

29. The Domain Name was not acquired and used by Plaintiff in bad faith and was not acquired for the purpose of, or with the intention of, targeting any trademark holder.

30. Plaintiff possesses legitimate rights and interests in the Domain Name and is entitled to a declaration that it has not violated the Anticybersquatting Consumer Protection Act.

31. Plaintiff does not use the Domain Name in association with any goods and services associated with Defendant's business.

32. Defendant's claims against Plaintiff constitute reverse domain name hijacking in violation of the Anticybersquatting Consumer Protection Act.

33. Defendant's conduct has been and will continue to be the direct and proximate cause of harm to Plaintiff.

34. An actual and justiciable controversy exists between Defendant and Plaintiff, and Plaintiff is entitled to a declaratory judgment that Defendant has violated the Anticybersquatting Consumer Protection Act, and that Plaintiff has ***not*** violated the Anticybersquatting Consumer Protection Act.

## COUNT II:

**Bad Faith UDRP Complaint: Reverse Domain Name Hijacking**

35. Upon information and belief, Defendant initiated the UDRP proceeding against Plaintiff in a bad faith attempt to deprive Plaintiff of the Domain Name VIRTUOSO.IO, when Defendant had no exclusive right to the highly descriptive word "virtuoso" throughout the world or even in the United States.

36. Indeed, Defendant knew when it filed the UDRP that Plaintiff was not using the Domain Name in association with any goods and services associated with Defendant's business.

37. Additionally, upon information and belief, Defendant made an unsolicited request for a price to purchase the Domain Name from Plaintiff and only filed the UDRP because it did not agree with, or could not pay, the price Plaintiff quoted.

38. Under the UDRP rules, Defendant had a duty to certify that the information contained in its UDRP Complaint and in its responses to procedural orders were, to the best of its knowledge, complete and accurate.

39. Instead, upon information and belief, Defendant knowingly provided the UDRP panel with materially incomplete and misleading information in connection with its bad-faith

scheme to gain control over the Domain Name.

40.     In consequence of the UDRP proceeding, Plaintiff's Domain Name VIRTUOSO.IO has been locked by the Domain Name's registrar, GoDaddy, denying Plaintiff the expected full enjoyment of the benefits of ownership and registration.

41.     Plaintiff provided Defendant with notice that it would file this action if the UDRP was not withdrawn and/or the parties could not arrive at a reasonable settlement.

42.     Defendant's improper conduct as set forth herein was knowing, intentional, and undertaken in bad faith and has been the direct and proximate cause of actual damages sustained by Plaintiff, in an amount to be determined according to proof at trial.

43.     Plaintiff has also incurred costs, including, without limitation, attorneys' fees and court costs, among other business damages, in seeking to prevent the transfer of the Domain Name by defending the UDRP proceeding and filing this lawsuit.

44.     Plaintiff is entitled to actual, statutory, and compensatory damages; punitive or exemplary damages; and reasonable fees and costs of suit, in an amount to be determined according to proof at trial.

### COUNT III:

### Intentional Interference with Contract

45.     Defendant knew of the existence of a valid contractual relationship between the Domain Name's registrar, GoDaddy, and Plaintiff.

46.     Upon information and belief, Defendant intentionally filed a frivolous and materially misleading UDRP claim for the purpose of interfering with the contractual arrangement between Plaintiff and GoDaddy, in an attempt to obtain ownership of a domain name it was not

able to buy from Plaintiff.

47. Defendant's conduct as set forth herein has been the direct and proximate cause of harm to Plaintiff by depriving it of the expected benefits of its contract with GoDaddy, by which it obtained ownership of the Domain Name and expected to exercise legitimate rights to use the Domain Name.

48. Plaintiff has also incurred costs, including, without limitation, attorneys' fees and court costs, among other business damages, in seeking to prevent the transfer of the Domain Name by defending the UDRP proceeding and filing this lawsuit.

49. Plaintiff is entitled to actual and compensatory damages, punitive or exemplary damages, and reasonable fees and costs of suit, in an amount to be determined according to proof at trial.

## COUNT IV:

### Abuse of Process

50. Upon information and belief, Defendant intentionally filed a frivolous and materially misleading UDRP claim for the purpose of obtaining ownership of a domain name that it was not able to buy from Plaintiff. Because of this abuse of the UDRP process, Plaintiff has been deprived of the expected benefits of its legitimate ownership of the Domain Name.

51. Plaintiff has also incurred costs, including, without limitation, attorneys' fees and court costs, among other business damages, in seeking to prevent the transfer of the Domain Name by defending the UDRP proceeding and filing this lawsuit.

52. Defendant's conduct was the direct and proximate cause of harm to Plaintiff.

53. Alternatively, Defendant's conduct was a substantial factor in the harm Plaintiff has

sustained.

54. Plaintiff is entitled to actual and compensatory damages; punitive or exemplary damages; and reasonable fees and costs of suit, in an amount to be determined according to proof at trial.

## PRAYER FOR RELIEF

Plaintiff respectfully requests judgment against Defendant as follows:

A. Declaration by the Court that, pursuant to 15 U.S.C. § 1114(2)(D)(iv)-(v), Plaintiff is entitled to registration, ownership and use of the Domain Name VIRTUOSO.IO;

B. Declaration by the Court that, pursuant to 28 U.S.C. § 2201, Plaintiff's registration of the Domain is lawful and does not infringe on any trade or service mark right the Defendant may claim in the United States;

C. Declaration by the Court that Defendant has engaged in reverse domain name hijacking;

E. A Judgment in favor of Plaintiff that Defendant has abused the UDRP process and has intentionally interfered with Plaintiff's contractual expectations;

F. Damages according to proof at trial, but in an amount not less than $100,000-per-incidence of reverse domain name hijacking;

G. Punitive damages according to proof at trial;

H. Costs and expenses, including costs under 15 U.S.C. § 1114(2)(D)(iv)-(v) and reasonable attorneys' fees; and

I. For such other and further relief as this Court deems just and proper.

**Trial By Jury Is Demanded On All Counts So Triable.**

Dated: November 23, 2022          Respectfully Submitted,

/s/ Brian Casper
Brian Casper
Texas Bar No. 24075563
brian.casper@klemchuk.com
Mandi Phillips
Texas Bar No. 24036117
mandi.phillips@klemchuk.com
KLEMCHUK LLP
8150 N. Central Expressway, 10th Floor
Dallas, Texas 75206
Tel: (214) 3676000
Fax: (214) 367-6001

Stevan Lieberman (*pro hac vice forthcoming*)
Greenberg & Lieberman, LLC
1775 Eye St., NW Suite 1150
Washington, D.C. 20006
P (202) 625-7000 F (202) 625-7001
Stevan@aplegal.com

**Attorneys for Plaintiff**